[Crim. No. 12694. Third Dist. Apr. 3, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS PERRY WEST, Defendant and Appellant.

**COUNSEL**

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Charles P. Just and David De Alba, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CARR, J.**—In this appeal defendant challenges certain provisions of that initiative measure familiarly known as the "Victim's Bill of Rights." (See *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274].) The issue presented is whether enhancement of an adult criminal offender's sentence based on prior juvenile adjudications of criminal misconduct is permissible. We find it is not and shall modify defendant's sentence accordingly.

A jury convicted defendant of burglary (Pen. Code, § 459), robbery (Pen. Code, § 211), and assault (Pen. Code, § 245, subd. (a)), with findings he was armed with a pistol and personally inflicted great bodily injury on the victim as to both the robbery and the assault. (Pen. Code, §§ 12022, 12022.7.) The trial court imposed the upper term of five years for the robbery and a consecutive term of three years for the great bodily injury enhancement. (Pen. Code, §§ 213, 12022.7.) A concurrent term of one year was imposed for the firearm enhancement. (Pen. Code, § 12022.) Execution of sentence on the burglary and assault counts was stayed pursuant to Penal Code section 654 and the weapon and great bodily injury findings as to the assault were ordered stricken. Defendant admitted he had suffered two prior juvenile adjudications of burglary of a residence and, purportedly, pursuant to article I, section 28, subdivision (f) of the California Constitution and Penal Code section 667, subdivision (a), the trial court imposed a five-year enhancement for each prior juvenile adjudication. The total unstayed term of imprisonment was 18 years.

Defendant urges the imposition of enhancements for the prior juvenile adjudications was improper and asserts insufficiency of the evidence to support the convictions.

FACTS

On July 10, 1982, the victim, 64-year-old Arnold Lommen was working in his front yard. He observed defendant and another man on motorcycles at a stop sign in front of his house. As they started to leave, the chain on defendant's motorcycle broke. Lommen approached them and offered assistance. The men entered Lommen's residence and defendant used the telephone. The two men then left on the other motorcycle to obtain some repair links. They returned shortly, borrowed some tools from Lommen, and repaired the chain. As they left, the men thanked Lommen and said " 'One of these days we're going to come back and we're going to pay you for this.' " The words were prophetic but the payment hardly appropriate for samaritan acts.

About a week later, on July 18th, defendant and his companion knocked on Lommen's door and were invited in by Lommen. The three conversed in the kitchen area for 10 to 15 minutes and then walked to the living room where Lommen and defendant's friend began discussing an antique telephone on the wall. Lommen was then struck down from behind. When he came to, he was bound hand and foot. He was lying face down and one of the men was holding a gun to his head. The men demanded money and threatened to shoot him. Lommen told them about what money he had. He was then beaten unconscious. It was eventually determined that Lommen's truck, a tape deck, some firearms, several musical instruments and other miscellaneous items had been taken.

The defense was alibi. Defendant conceded he had been to the victim's home on July 10th. On July 18th, however, according to the testimony of Mrs. Higby, a friend and neighbor of defendant's mother, defendant spent the entire afternoon at a picnic with her family at Folsom Lake. Defendant also testified he spent the entire day at the picnic and did not return to Mr. Lommen's on the 18th.

## DISCUSSION

### I

Defendant initially contends the evidence is insufficient to sustain his convictions because the victim's identification was based on suggestive pretrial photographic lineups and was unreliable. Further, the trial identification was discredited when the victim also identified a photograph of defendant's companion, Terry Poore, as defendant. As there was no physical evidence linking him with the robbery, defendant concludes the questionable identification evidence is insufficient to support the jury's verdicts. We disagree.

■ "A conviction based on eyewitness identification at trial after a pretrial display of photographs, including photographs of the defendant, 'will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (*People* v. *Hunt* (1977) 19 Cal.3d 888, 894 [140 Cal.Rptr. 651, 568 P.2d 376], citing *Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) In making this determination, several factors are pertinent: the opportunity of the witness to view the defendant at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the defendant; the level of uncertainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. (*People* v. *Savala* (1981) 116 Cal.App.3d 41, 49 [171 Cal.Rptr. 882].)

The photographic lineups in the instant case were shown to the victim on July 27, 1982, and August 4, 1982, nine months and fourteen days after the incident. On each occasion he identified the defendant without hesitation. On July 10th and 18th the victim had ample time to view the defendant. The victim's degree of attention was undoubtedly high on these occasions as he had invited the defendant into his home. Defendant concedes the victim identified defendant as his assailant at both the preliminary hearing and at trial.

■ Against this consistent positive identification, defendant urges the black and white photographic lineup was suggestive because defendant's face was turned a different direction than the others and the color photographic lineup was suggestive because defendant's picture had a "yellow cast." We have examined these exhibits, and conclude they are not impermissibly suggestive. The black and white lineup contains a full face and profile picture of each person. While defendant's profile is facing the opposite direction from the other five pictures, the point of concern to the witness is the person's features, not the direction he is facing. In the color lineup, the fact defendant's face has a "yellow cast" is unimpressive as photograph number six has a distinctly "red cast," number four has an "orange cast," and others have differing color characteristics. The minor variations in these photographic lineups do not render them unduly suggestive. (Cf. *People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 557 [166 Cal.Rptr. 45] [defendant's picture "darker-complected" than the others]; *In re Charles B.* (1980) 104 Cal.App.3d 541, 545 [166 Cal.Rptr. 729] [defendant is the only one shown wearing a bandana on his head]; *People* v. *De Angelis* (1979) 97 Cal.App.3d 837, 841 [159 Cal.Rptr. 111] [defendant's picture has "increased depth of shading and sharpness of detail"].)

While conceding "these procedures may not have been overly suggestive in and of themselves," defendant urges the victim's misidentification at trial of photographs of other persons as defendant reveals his confusion. The People concede the victim identified a photograph of Terry Poore as defendant. It further appears that at trial the victim identified a photograph of one Gary Holt, Terry Poore's brother, as defendant. Examination of Poore's photograph, which the victim identified as defendant, discloses Poore was wearing a hat in the picture; the victim identified Poore as being partially bald. Poore's face in the picture appears similar to that of defendant as depicted in the black and white photo lineup. The picture of Poore's brother, who is hatless and not bald, also looks similar to the black and white photograph of defendant. Though the victim exhibited some confusion as to single photographs of other persons which appeared similar to defendant's photograph, he correctly picked defendant out of two photographic lineups and twice identified him in person as his assailant. ■ Viewing

this evidence in the light most favorable to the People, it was reasonable for the jury to view the misidentifications as understandable based on the quality of the individual photographs and to credit the in-person and lineup identifications as reliable. The reliability of the in-court identification was corroborated by defendant's statements shortly after arrest that he knew where the stolen goods had been sold, and when asked about the whereabouts of Mr. Poore, stated "I'll take this ship to sea alone." Presuming in support of the judgment every fact the jury could reasonably deduce from the evidence (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), we conclude there is substantial evidence in support of defendant's convictions.

## II

Defendant contends he was improperly sentenced for two prior serious felony convictions pursuant to Penal Code section 667, subdivision (a). That subdivision provides in part: "Any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." Defendant's attack is threefold: (1) Notwithstanding the mandatory language of subdivision (a) of section 667, the trial court has the discretionary power to strike such an enhancement pursuant to Penal Code section 1385;[1] (2) if the imposition of enhancements pursuant to Penal Code section 667, subdivision (a) is indeed mandatory, it constitutes cruel and unusual punishment; and (3) because defendant's prior juvenile adjudications are not "felony convictions" they are not within the purview of Penal Code section 667, subdivision (a). We conclude the last contention is dispositive of the issue and requires that we strike the imposition of the enhancements.

Section 667 was added to the Penal Code as part of Proposition 8 at the June 8, 1982, primary election.[2] The voters also added article I, section 28

---

[1] See *People* v. *Lopez* (1983) 147 Cal.App.3d 162, 165 [195 Cal.Rptr. 27].

[2] The full text of Penal Code section 667 is as follows: "(a) Any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

"(b) This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply.

"(c) The Legislature may increase the length of the enhancement of sentence provided in

to the state Constitution (the "Victim's Bill of Rights") at that time. Subdivision (f) of article I, section 28 provides in relevant part: "Any prior felony conviction of any person in any criminal proceeding, *whether adult or juvenile,* shall subsequently be used without limitation for purposes of . . . enhancement of sentence in any criminal proceeding." (Italics added.) The People contend this language is clear and mandatory.[3] They urge the reference in article I, section 28, subdivision (f) to *juvenile* "convictions" can refer to nothing other than wardship adjudications under Welfare and Institutions Code section 602.[4] Since such "juvenile convictions" are to be used without limitation for purposes of enhancement, it is urged, it was proper for the trial court to impose the two 5-year enhancements for defendant's prior juvenile adjudications.[5] We disagree.

As was recently stated in *In re Joseph B.* (1983) 34 Cal.3d 952, 955 [196 Cal.Rptr. 348, 671 P.2d 852], "minors charged with violations of the Juvenile Court Law are not 'defendants.' They do not 'plead guilty,' but admit the allegations of a petition. Moreover, 'adjudications of juvenile wrongdoing are not "criminal convictions."'" [Citation.] As section 203 [of the Welf. & Inst. Code] states, '[a]n order adjudging a minor to be a ward

---

this section by a statute passed by majority vote of each house thereof.

"(d) As used in this section 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7.

"(e) The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors."

[3]At oral argument, the People relied on language of this court's opinion in *People* v. *Harrison* (1984) 150 Cal.App.3d 1142, 1155 [198 Cal.Rptr. 762], that "The language used in subdivision (f) of section 28 is too clear and unambiguous for there to exist any doubt as to its meaning." Such reliance is misplaced and the cited language in question must be read in the context of the issue under consideration. The issue with an adult prior conviction was whether the language of subdivision (f) of section 28 was modified by subdivision (b) of section 28 to preserve the *Beagle* line of cases in determining if a prior *conviction* could be used for impeachment purposes. The issue here is whether a juvenile adjudication is a prior conviction.

[4]Welfare and Institutions Code section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[5]The second amended information alleged that on two separate prior occasions the defendant had been "convicted of the serious felony offense of burglary of a residence" by the Sacramento County Superior Court, "sitting as the Juvenile Court." The probation report reveals that two petitions alleging "felony burglary" against defendant were sustained. On each occasion the defendant was committed to the California Youth Authority. The probation report further indicates that both burglaries were of residences. While Penal Code section 1192.7, subdivision (c)(18) defines "burglary of a residence" as a "serious felony" for purposes of Penal Code section 667, subdivision (a), the present record does not indicate whether defendant's prior "felony burglary" adjudications were of first or second degree. (Pen. Code, § 460.)

of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding.'" ■ A distinction is made between criminal convictions and juvenile adjudications because of the fundamentally different purposes the two bodies of law are designed to serve. "Juvenile court proceedings are designed for the *rehabilitation of minors and not punishment.*" (*In re Dennis J.* (1977) 72 Cal.App.3d 755, 762 [140 Cal.Rptr. 463].) (Italics added.) The purpose of such proceedings goes beyond the mere protection of the public from crime. The proceedings are intended to secure for the minor such care and guidance as will best serve the interests of the minor and the state, and to impose upon the minor a sense of responsibility for his own acts. (Welf. & Inst. Code, § 202.) The purpose of imprisonment pursuant to the criminal law, on the other hand, is *punishment.* (Pen. Code, § 1170, subd. (a).) There are numerous procedural differences between a juvenile proceeding and a criminal proceeding, most notably in the area of due process (e.g., right to a jury trial). (See *In re Joseph H.* (1979) 98 Cal.App.3d 627, 631 [159 Cal.Rptr. 681].)

If we read article I, section 28 of subdivision (f) in the manner the People urge, we are compelled to conclude this subdivision works an implied repeal of Welfare and Institutions Code section 203. ■ Such repeals by implication are not favored and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) ■ The fallacy of the People's argument is that it assumes there are no other "convictions" or "criminal proceedings" to which the word "juvenile" could refer in subdivision (f) of article I, section 28, other than wardship proceedings under Welfare and Institutions Code section 602. The juvenile court is empowered to determine that a minor over the age of 16 is not a fit and proper subject to be dealt with under the Juvenile Court Law. (Welf. & Inst. Code, § 707.) If such a finding of unfitness is made, the minor may be certified to a court of *criminal jurisdiction* and the district attorney acquires the authority to prosecute the juvenile according to the laws applicable to a criminal case. (Welf. & Inst. Code, § 707.1, subd. (a).) In this manner, a *juvenile* person may suffer a "felony conviction" in a "criminal proceeding," and the use of the word "juvenile" in article I, section 28, subdivision (f) is given meaning consistent with Welfare and Institutions Code section 203.

Moreover, we disagree that the intent of the electorate was to alter existing law and make juvenile adjudications "convictions" for purposes of enhancement. ■ Where an enactment follows voter approval, as in this case, "the ballot summary and arguments and analysis presented to the

electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281].) The analysis of the legislative analyst appended to Proposition 8 contains a discussion entitled: "Longer Prison Terms." (Ballot Pamp., Proposed Amends. to Cal. Const., with analysis by the legislative analyst, Primary Elec. (June 8, 1982) p. 54, hereafter referred to as Analysis.) The analysis first sets out existing law and states, "[c]onvictions resulting in probation or commitment to the Youth Authority generally are not considered for the purpose of increasing sentences, . . ." (Analysis, at p. 54.) The analysis continues that under the new law, "upon a second or subsequent conviction for one of these [specified] felonies, *the defendant* could receive, on top of his or her sentence, an additional five-year prison term for *each such prior conviction*. . . . Second, *any* prior felony *conviction* could be used without limitation in calculating longer prison terms." (Analysis, at pp. 54-55.) (Italics added.)

While it might be argued that "convictions resulting in . . . commitment to the Youth Authority" was a reference to juvenile adjudications under Welfare and Institutions Code section 602, we must assume the legislative analyst was aware of existing law and was not so inartful as to include wardship adjudications under the incorrect heading of "convictions." (Welf. & Inst. Code, § 203; see *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) We therefore assume the analysis *correctly* states the then existing law that *adult* convictions, which result in commitment to the Youth Authority under Welfare and Institutions Code section 1731.5, which grants the trial court discretion to commit certain defendants between the ages of 18 and 21 to Youth Authority, may not be used to enhance a sentence under Penal Code section 667.5. (*People* v. *Redman* (1981) 125 Cal.App.3d 317, 323 [178 Cal.Rptr. 49], disapproved on another point in *People* v. *Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 760, fn. 5 [191 Cal.Rptr. 1, 661 P.2d 1081].) The analysis then advises that such adult convictions *may* be used for enhancement purposes under article I, section 28, subdivision (f). The legislative analyst's analysis of Proposition 8 is particularly significant in that it specifically omits any mention of juvenile wardship adjudications and discusses only "convictions" in connection with "Longer Prison Terms." As we assume the legislative analyst was aware that juvenile adjudications are *not* convictions, we must also assume this omission was intentional. Accordingly, the only evidence of the intent of the electorate in this regard must be gleaned from this omission. The voters were *not* told that juvenile wardship adjudications would be considered "convictions" for purposes of enhancement but were told the status of other prior *adult convictions* was being changed; we may therefore presume they did not intend to change the status of prior wardship adjudications under Welfare and Institutions Code section 602.

We do not question the power of the electorate to require the imposition of a five-year enhancement onto a new conviction for each prior juvenile adjudication. But the question presented here is whether they have done so by the enactment of the constitutional provision "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of . . . enhancement of sentence . . . ." (Art. I, § 28, subd. (f).) To interpret the word "juvenile" in article I, section 28, subdivision (f) as modifying either the words "conviction" or "criminal proceeding" would require a drastic change in the law which was neither explained to the electorate nor apparent on the face of the enactment. Construing the provision in a manner consistent with existing law, the word "juvenile" must modify "person,," so that article I, section 28, subdivision (f) permits the unlimited use of prior felony *convictions* for enhancement purposes, whether the person convicted was an adult or juvenile being tried as an adult at the time of the prior conviction. Moreover, the constitutional provision is merely an enabling enactment. It is the statutory enactment, Penal Code section 667, subdivision (a), which actually requires the imposition of an additional five-year term for "each such prior conviction." Penal Code section 667, subdivision (a) does not define "prior conviction." Accordingly, we determine the defendant's prior juvenile adjudications were not "prior conviction[s]" within the meaning of Penal Code section 667, subdivision (a). The trial court erred in imposing the two five-year enhancements.

The judgment is modified by striking therefrom the two 5-year enhancements imposed pursuant to Penal Code section 667, subdivision (a). As so modified, the judgment is affirmed.

Regan, Acting P. J., and Blease, J., concurred.