Filed 2/13/24  P. v. Little CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079702 |
| v. | (Super.Ct.No. FVI22000326) |
| JESSE SCOTT LITTLE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Shannon L. Faherty, Judge.  Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

After a jury convicted Jesse Scott Little of driving with willful or wanton disregard for safety while evading a peace officer, Little requested the court exercise its discretion to strike a prior strike. The court declined to do so. On appeal Little argues that recent changes in the law required the court to consider mitigating circumstances before declining to strike the strike. We disagree and affirm.[1]

BACKGROUND

In June 2022, a jury convicted Little of driving with willful or wanton disregard for safety while evading a peace officer. (Veh. Code, § 2800.2, subd. (a).) In a bifurcated trial, the court found Little had a prior strike.

In August 2022, Little filed a request for the court to dismiss the prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). The court denied Little's request and sentenced him to the upper term of three years, doubled due to the prior strike.

DISCUSSION

Little argues the trial court erred by denying his request that it strike his strike. Specifically, Little argues that Senate Bill No. 81 changed the law such that trial courts must consider mitigating circumstances before declining to strike a strike. The People argue Senate Bill No. 81 does not apply to strikes. We agree with the People and affirm.

---

[1] Little also requests that we take judicial notice of certain legislative history materials. We grant this request for judicial notice. (Evid. Code, § 452, subd. (c).)

Penal Code section 1385[2] governs a trial court's discretion to dismiss various elements of an action or sentence on its own motion. This includes the ability to dismiss all or any portion of an action, including enhancements and prior strikes. (§ 1385, subds. (a)-(c); *Romero*, *supra*, 13 Cal.4th at p. 508.) In 2022, Senate Bill No. 81 amended section 1385 to include a series of mitigating circumstances and required courts to "consider and afford great weight to evidence offered," to prove those mitigating circumstances. (Stats. 2021, ch. 721, § 1; § 1385, subd. (c)(2).) Moreover, "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

In *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*) our colleagues in the Third District Court of Appeal considered whether the changes enacted by Senate Bill No. 81 applied to prior strikes as well as enhancements. They concluded Senate Bill No. 81 did not apply to strikes. In so holding, *Burke* argued that "[t]he term 'enhancement' has a well-established technical meaning in California law," specifically, that it is " ' "an additional term of imprisonment added to the base term." ' " (*Id.* at p. 243.) Meanwhile "[i]t is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Ibid.*, citing *Romero*, *supra*, 13 Cal.4th at p. 527.) *Burke* "presume[d] the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an

---

[2] Unlabeled statutory citations refer to this code.

3

enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Burke*, at p. 243.) Therefore, because "[t]he Legislature did not otherwise define the word 'enhancement' in section 1385," and "the statutory language is clear and unambiguous," *Burke* opted to follow that language without considering any legislative history materials. (*Id.* at p. 243.)

We agree with *Burke* and conclude that "section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 244.)

Nevertheless, Little argues we should reject *Burke* and decline to follow its reading of section 1385. Little notes one of the mitigating circumstances a court must consider is whether "[t]he defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case." (§ 1385, subd. (c)(2)(G).) He further notes there are no enhancements that can be triggered by previous juvenile adjudications, but they can constitute prior strikes. (§§ 667, subd. (d)(3), 1170.12, subd. (b)(3); *People v. West* (1984) 154 Cal.App.3d 100, 103.) According to Little, interpreting section 1385, subdivision (c), so that it does not apply to strikes would render this phrasing surplusage, making the statute ambiguous and justifying consideration of legislative history materials to resolve its meaning.

We disagree. The distinction between an enhancement and a strike is well-established and (as discussed more below) well known to the Legislature. If the

4

Legislature had meant to include strikes, it would have said so directly. Indeed, the distinction between an enhancement and a strike is so well-established that it would be preferable to read certain portions of section 1385 as surplusage rather than abandon that distinction. Canons of statutory construction are rules of thumb to assist in the interpretation of unclear statutory language. As such, they are discretionary and should not be used to override the plain language of a statute. (See, e.g., *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 ["When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' "].) Here, the statutory use of the term "enhancement" is so clear that the surplusage canon of construction does not warrant interpreting it contrary to its accepted meaning.

*People v. Olay* (2023) 98 Cal.App.5th 60 (*Olay*) recently analyzed the legislative history of Senate Bill No. 81 and found it supports the conclusion that the Legislature intended "enhancement" to accord with its accepted meaning. That court, like ours, was "skeptical the Legislature would have expressed an intent to reject the well-established legal meaning of 'enhancement' in such a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances" and that "[t]he legislative history confirms the Legislature had no such intent." (*Id.* at p. 67.) The court noted that the legislative history includes a statement that "[a]n enhancement differs from an alternative penalty scheme," and "[t]he presumption created by this bill applies to

5

enhancements, but does not encompass alternative penalty schemes." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.), as amended Apr. 27, 2021, pp. 5-6.) "A more unambiguous statement of the Legislature's intent to adopt the legal meaning of enhancement for section 1385, subdivision (c) can hardly be imagined." (*Olay*, at p. 67.) Moreover "subsequent history makes no reference whatsoever to the Three Strikes law or any other alternative sentencing scheme." (*Id.* at p. 68.)

Little argues this legislative history is ambiguous, in accord with a footnote from *Burke* stating, "much of the legislative history [of Senate Bill No. 81] is inconsistent with this plain language and suggests that the term enhancement includes the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 243, fn. 3.) *Olay* responded to *Burke*'s footnote by concluding that "a closer look at that legislative history reveals that there is no ambiguity and that the Legislature did not intend for that term to include prior strikes." (*Olay*, *supra*, 98 Cal.App.5th at p. 348.) The legislative history materials which created this alleged ambiguity were a report from the Committee on the Revision of the Penal Code (CRPC) from February 2021 which "repeatedly refers to 'Strikes' as enhancements rather than using the technical legal meaning and does not separate 'Strikes' from inclusion in its recommendation." (*Burke*, at p. 243, fn. 3.) But as *Olay* points out, "the June 2021 bill analysis makes it clear that Senate Bill [No.] 81 only codified the CRPC's 'recommendation [on the application of] sentence enhancements' [citation]—which does not encompass alternative sentencing schemes like the Three Strikes law." (*Olay*, at p. 69, italics omitted.) Thus "to the extent the legislative history may have been unclear

about the meaning of the term enhancement before June 2021, the June 2021 bill analysis cleared up that confusion." (*Id.* at p. 69.)

Accordingly, we conclude Senate Bill No. 81 does not apply to prior strikes, and therefore the trial court did not err when it declined to exercise its discretion to strike Little's prior strike without considering mitigating circumstances.

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____

J.

We concur:

MILLER_____

   Acting P. J.

FIELDS_____

   J.