Filed 5/23/14  P. v. Mills CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL ERIC MILLS,<br><br>    Defendant and Appellant. | B251258<br><br>(Los Angeles County<br>Super. Ct. No. MA057312) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed with modifications.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant, Michael Eric Mills, pled no contest to first degree residential burglary. (Pen. Code, § 459.)[1] Defendant admitted he had sustained prior convictions within the meaning of sections 667, subdivisions (b) through (i) and 1170.12. He also admitted he had previously served a prior prison term. (§ 667.5, subd. (b).) The trial court ruled an alleged section 667, subdivision (a)(1) five-year enhancement for a prior serious felony was inapplicable because the underlying offense was a juvenile adjudication. (*People v. Smith* (2003) 110 Cal.App.4th 1072, 1080, fn. 10; *People v. West* (1984) 154 Cal.App.3d 100, 106-110.) Defendant was sentenced to nine years in state prison. Defendant appeals from the denial of his motion to withdraw his no contest plea. Defendant obtained a probable cause certificate. (*People v. Johnson* (2009) 47 Cal.4th 668, 679; *People v. Ribero* (1971) 4 Cal.3d 55, 63-64.) We find no abuse of discretion. We modify the judgment with respect to presentence custody and conduct credits. We further modify the oral pronouncement of judgment to reflect penalties and a surcharge on a local crime prevention programs fine. (§ 1202.5, subd. (a).) We affirm the judgment as modified.

# II. BACKGROUND

## A. The September 20, 2012 Preliminary Hearing

The burglary occurred on July 17, 2012. A Nintendo system and a laptop were stolen. Deputy Daniel Gore interviewed defendant in custody on September 4, 2012. A "fingerprint return" from the first floor outside window pane of the victim, Kah-Kia Mattress, had led Deputy Gore to defendant. Defendant was told his fingerprint had been found on Ms. Mattress's window. Defendant said he had a brief relationship with Ms. Mattress. Defendant explained that while visiting Ms. Mattress's home, he closed a

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

window because it was cold in the house. Deputy Gore testified, "I explained to him that the fingerprint was on the outside, not on the inside of the window, and this happened in July when we were still in triple digit weather so there was no reason to close the window." When Deputy Gore inquired, Ms. Mattress confirmed defendant had been in her house. But she denied defendant had ever touched the window. Ms. Mattress told Deputy Gore, "[H]e never shut the window because it was so hot, the air conditioning had been on."

Deputy Gore re-interviewed defendant. Deputy Gore accused defendant of burglarizing the apartment in anger after discovering Ms. Mattress was a man. Deputy Gore testified, "When I made the statement, [defendant] didn't deny it and he didn't confirm it." Deputy Gore asked defendant whether Ms. Mattress's property would be recovered. Defendant said the victim's stolen gaming system was "long gone." Defendant denied knowing anything about Ms. Mattress's laptop. Defendant told Deputy Gore, "[H]e knew what he had done but he needed to find out what type of time, referring to what type of offer, he was going to be given . . . ." Defendant said he was willing to pay restitution. At the conclusion of the preliminary hearing, defendant was held to answer.

## B. The Plea Negotiations

At the outset of the September 20, 2012, preliminary hearing, the prosecutor described a pending settlement offer: "It's count 1, low term [of two years] doubled for the strike for a total of four years, and now count 2, one third the [two-year] midterm for a total of, I believe, five years[, four months]." Defendant, on the record, declined to accept the offer.

The parties appeared for trial on January 22, 2013. The trial court inquired about the status of plea negotiations. Deputy Public Defender Cornell Mimms advised the court: "According to my notes, on September 20th, my client relayed an offer of four years to the People. And that was rejected. [¶] And according to my notes, that was the

last best offer made by the defense to the People. [¶] And I think at that time, the People's offer was five years, four months. And that would be calculated as low term on count 1 plus count 2." When the trial court asked whether the offer was still open, Deputy District Attorney Taly Peretz responded: "No, Your Honor. I don't have any notes representing that offer of five years, four months. [¶] The only offer that I have in the file is a nine-year offer that was made prior to trial. And I believe that it was the low term times two plus the five-year prior." The following transpired: "The Court: And Mr. Mimms, you indicated that your file indicates there was an offer extended at some point of five years, four months? [¶] Mr. Mimms: Correct. On [September 18], the People's offer was nine years. [¶] It looks like two days later, the People made an offer on September 20th, five years, four months. They wanted a plea to both counts. [¶] . . . [¶] Ms. Peretz: . . . My notes indicate on September 20th, your Honor, in Department A-2 in front of Judge Estes, my understanding is that the offer that was conveyed by counsel was a mid-term on Count 1. I don't know if it's just mid-term without double. [¶] . . . [¶] Mr. Mimms: It was mid-term, four years." Following a lunch break, Ms. Peretz advised the trial court, "[W]e won't take anything less than four years."

On January 28, 2013, after the jury was sworn, the parties announced they had a disposition. Ms. Peretz stated, "The defendant is going to plead guilty to count 1, a residential burglary, for the mid-term of four years doubled for the strike, eight, plus an additional one year pursuant to the [section] 667.5[, subdivision] (b) prior, for a total of nine years in state prison." Following advisements and waivers, defendant pled no contest to first degree burglary and admitted the prior conviction and prison term allegations. Defendant did not admit he had sustained a prior serious felony conviction within the meaning of section 667, subdivision (a)(1).


C.  Defendant's Oral Motion To Withdraw His Plea


Over two months later, on April 2, 2013, Mr. Mimms said, "[Defendant] informed me he would like to withdraw his plea." At Mr. Mimms's request, the trial court

4

appointed new counsel to represent defendant to determine whether there were grounds to permit the plea to be withdrawn. On April 16, 2013, defendant appeared in court represented by Robert Nadler. Mr. Nadler sought and was granted a continuance. On June 14, 2013, defendant was once again represented by Mr. Mimms. The trial court stated on the record it had become aware of *People v. Sanchez* (2011) 53 Cal.4th 80, 90, which disapproved appointing a conflict attorney solely to evaluate a defendant's legal grounds to withdraw a plea. Mr. Mimms said: "I think the appropriate procedure would be for the [c]ourt to inquire of [defendant] the reasons he wants to withdraw his plea . . ." Defendant answered: "[O]n several occasions for when I've asked my lawyer for copies of my paperwork-- [¶] . . . [¶] . . . I feel like evidence was withheld from me. I was lied to about my maximum exposure on the case, my maximum sentence on the case . . . [¶] . . . [¶] . . . [b]y my attorney, and I don't feel that all the steps prior to trial were done appropriately." The trial court inquired further: "The Court: And so your contention is that, if you had had a different attorney, it would have turned out differently"? [¶] The defendant: I feel that, if I would have had a different attorney and I would have been represented effectively, we wouldn't have been—even made it to trial, or we would have – I wouldn't have been taking nine years, in other words. [¶] The Court: So you want a substitute attorney? [¶] The defendant: Yes, your Honor."

## D. The Substitution Of Counsel Hearing

The trial court held a substitution of counsel motion hearing. Defendant said after the preliminary hearing, he wanted to go to trial. Defendant then told the trial court, "I asked [Mr. Mimms] several times for copies of my transcripts of the preliminary and my police report, and he told me that, well, you know the case better than I do so you really don't need it." Defendant explained he had considered taking the prosecution's five-year offer prior to the preliminary hearing. But Mr. Mimms advised against it. Mr. Mimms said he believed they had a fair chance of winning at trial. But after the jury was sworn, Mr. Mimms spoke to defendant. In that conversation, defendant was advised he should

5

consider accepting the nine-year offer. Mr. Mimms said he had just received "discovery" showing the prosecution evidence included a palm print, not merely a fingerprint. Defendant described the conversation with Mr. Mimms: "After the jury . . . was selected . . . [and] sworn in, [Mr. Mimms] tells me that I should consider taking a deal. [¶] And I say, well, why would I consider taking a deal after I've been in here all this time and I could have took a deal already? And he's like, oh, well, I just got your evidence sheet of the discovery, you know, I guess, and it wasn't just a fingerprint. It was a palm print, and I explained to him that there was another scenario with the case, and he indicated to me that it was too late." In addition, defendant said he was told his maximum exposure was 18 years. According to defendant, he explained the alleged prior serious conviction arose from a juvenile court dispositional order. Defendant further advised the trial court: "And the fact that from what I understand is that, I believe, pretrial is for the defense and the People to give motions and certain things out of the way, you know, to prepare for trial, and that wasn't done. [¶] I feel - - I mean, how can you advise a client to trial without knowing all the evidence? You're basing all the evidence off of police reports and what was said at prelim."

The trial court then inquired of Mr. Mimms. Mr. Mimms said that prior to the preliminary hearing, the offer was nine years in state prison. The prosecution subsequently offered five years, four months. Defendant countered with four years. There was no resolution at that time. Regarding paperwork, Mr. Mimms said he did not typically turn paperwork over to clients, especially those in custody. Mr. Mimms expressed his concern that confidential or privileged information would be inadvertently disclosed or paperwork would fall into the wrong hands. Mr. Mimms's initial assessment of defendant's maximum exposure was based on the allegations in the information. The information alleged defendant was subject to a five-year prior conviction enhancement under section 667, subdivision (a)(1). According to Mr. Mimms, he discovered the alleged prior conviction allegation would not qualify for the section 667, subdivision (a)(1) five-year enhancement. Mr. Mimms said, "I think we've even brought it to the Court's attention like right before the trial that that allegation wouldn't apply, which

6

would reduce [defendant's] exposure by five years." And Mr. Mimms acknowledge he received some "late discovery": "As the Court probably knows, sometimes things aren't turned over until the last minute because the investigating officer is not available and not here or those things were not booked into evidence. [¶] There were a few pieces of additional discovery that I did receive at the last minute, but I think those were things that were not of very important significance. It mainly dealt with photos and things like that that I believe the People had the investigating officer or deputy go out and do at the last minute."

The trial court ruled Mr. Mimms's representation of defendant had not been incompetent or ineffective. The trial court held, however, that it was necessary to reappoint Mr. Nadler. The trial court's reasons were unclear other than it found there was a breakdown and a divergence of fact.

E. Defendant's Written Motion To Withdraw His Plea

On July 22, 2013, Mr. Nadler, filed a written motion to withdraw defendant's no contest plea. Defendant declared: "Before the day I entered a plea in this matter, I had always been told by my lawyer that the only scientific evidence against me in this case was evidence of a fingerprint at the scene of the alleged crime, but then on the day of trial I was told for the first time that the evidence was actually a palm print. [¶] It was not until the day that the jury was sworn in that I first saw the discovery in this matter. [¶] I believe that I was misinstructed by my trial lawyer in regards to what my maximum penalty was in this case. [¶] My trial lawyer did not file any motions on my behalf, and I felt that my lawyer had not prepared this matter for trial. [¶] On the day of my plea I felt pressured by my lawyer. [¶] I immediately thereafter, as soon as my mind cleared from the confusion, wanted to withdraw the plea I had entered." We note that, contrary to defendant's assertion, Mr. Mimms did file a motion on defendant's behalf. In November 2012, Mr. Mimms filed a pretrial discovery motion.

7

Defendant's motion to withdraw his no contest plea was heard on July 22, 2013. Mr. Nadler advised the trial court defendant's testimony was unnecessary. This was because defendant would just repeat what was in his written declaration. Mr. Nadler also stated his belief that defendant's statements at the substitution of counsel motion hearing were essentially the same as those in his written declaration. The trial court ruled: "I was the bench officer who took the defendant's plea. I read him all of the waivers, and I explained to him all of the consequences of his plea and his rights. [¶] He waived and gave up all of those rights, and at the conclusion of that, after he had more than ample time to discuss the matter with his attorney at that time, he was found guilty on his plea. And I explained to him at that time that - - and I found at that time that he had expressly, knowingly, understandingly, intelligently, explicitly and voluntarily waived his constitutional rights. [¶] To the extent that the *Marsden* hearing was relevant to the current matter and any statements that Mr. Mimms might have made, which is a sealed proceeding, I did not find at any time during that proceeding that he was at all ineffective or incompetent in advising [defendant] of his rights. [¶] In fact, I've always found and find in this case that Mr. Mimms did a great and fantastic job in representing his client. The only issue that was before me today is whether there's some legal ground for the defendant's motion to withdraw the plea, and after reviewing the plea transcript and from my prior contact with the case and [defendant] and Mr. Mimms specifically on those prior dates, I do not find that there's a sufficient ground for the withdrawal of the plea, and the motion is respectfully denied."

## III. DISCUSSION

### A. Defendant's Motion To Withdraw His Plea

On appeal, defendant argues Mr. Mimms was ineffective in three respects. First, Mr. Mimms miscalculated defendant's maximum punishment. Second, Mr. Mimms failed to advise defendant the police had a palm print, rather than just a fingerprint, until

8

after the jury was impaneled. Third, defendant felt pressured by Mr. Mimms to accept the offer. Defendant asserts he would not have accepted the proposed disposition had he not felt pressured by two factors. The first factor is Mr. Mimms's miscalculation of the maximum sentence. And the second factor is Mr. Mimms's sudden change in assessment of the case. We hold there was no abuse of discretion.

Prior to judgment, a trial court may allow a defendant to withdraw his or her guilty or no contest plea for good cause shown by clear and convincing evidence. (§ 1018; *People v. Johnson, supra,* 47 Cal.4th at p. 679; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *People v. Cruz* (1974) 12 Cal.3d 562, 566.) Our Supreme Court has held: "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. (*People v. Barteau* (1970) 10 Cal.App.3d 483, 486; *People v. Brotherton* (1966) 239 Cal.App.2d 195, 200-201, and cases cited therein.)" (*People v. Cruz, supra,* 12 Cal.3d at p. 566; accord, *People v. Johnson, supra,* 47 Cal.4th at p. 679; *People v. Fairbank, supra,* 16 Cal.4th at p. 1254.) However, as the Court of Appeal further explained in *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416, "'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.' ([*People v.*] *Nance* [(1991) 1 Cal.App.4th 1453,] 1456.)." We apply an abuse of discretion standard of review: "A decision to deny a motion to withdraw a guilty plea '"rests in the sound discretion of the trial court"' and is final unless the defendant can show a clear abuse of that discretion. (*In re Brown* (1973) 9 Cal.3d 679, 685, quoting *People v. Francis* (1954) 42 Cal.2d 335, 338.) Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533.)" (*People v. Fairbank, supra,* 16 Cal.4th at p. 1254.) In determining the facts, a trial court is not bound by a defendant's uncontradicted statements. (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103; *People v. Brotherton, supra,* 239 Cal.App.2d at p. 201.)

Our Supreme Court has recognized the importance of plea bargaining in the criminal justice system. "'Whatever might be the situation in an ideal world,' plea bargaining is an integral component of the criminal justice system and essential to the

9

expeditious and fair administration of our courts. (*Blackledge v. Allison* (1977) 431 U.S. 63, 71; see *Santobello v. New York* (1971) 404 U.S. 257, 260-261; *People v. West* [(1970)] 3 Cal.3d [595,] 604-605.) Commentators have estimated that in most jurisdictions, between 80 and 90 percent of criminal cases are disposed of by guilty pleas (Bond, Plea Bargaining & Guilty Pleas (1983) § 1.2, at pp. 1-2 to 1-3), which, in the majority of cases, are the product of plea bargains. (*Id.,* § 2.8, pp. 2-23 to 2-24.) Thus, most criminal defendants are faced with the crucial decision whether to plead guilty pursuant to a plea bargain or instead proceed to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) But plea bargaining is an inexact process as the United States Supreme Court observed in *Brady v. United States* (1970) 397 U.S. 742, 756: "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." (See *People v. Panizzon* (1996) 13 Cal.4th 68, 86.)

A defendant is entitled to effective assistance of counsel at the plea bargaining stage of a criminal proceeding. (*In re Resendiz* (2001) 25 Cal.4th 230, 239, abrogated on another point by *Padilla v. Kentucky* (2010) 559 U.S. 356, 370; *In re Alvernaz, supra,* 2 Cal.4th at p. 933; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1133.) Our Supreme Court has noted: "It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. (*Hill v. Lockhart* [(1985)] 474 U.S. [52,] 56-60; *McMann v. Richardson* [(1970)] 397 U.S. [759,] 771; *In re Williams*

10

[(1969)] 1 Cal.3d [168,] 174-175.)" (*In re Alvernaz, supra,* 2 Cal.4th at p. 934; accord, *In re Resendiz, supra,* 25 Cal.4th at p. 239.) Our Supreme Court has explained the attorney's role in plea bargaining: "Although th[e] decision [to plead guilty] ultimately is one made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain. The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of the trial. (See *People v. Stanworth* (1974) 11 Cal.3d 588, 611-612[, disapproved on another point in *People v. Martinez* (1999) 20 Cal.4th 225, 237]; *In re Williams*[, *supra,*] 1 Cal.3d [at pp.] 174-175; *People v. Brown* (1986) 177 Cal.App.3d 537, 544-545; 1 Amsterdam (1984) Trial Manual for the Defense of Criminal Cases, § 201, p. 1-229.)" (*In re Alvarez, supra,* 2 Cal.4th at p. 933; accord, *In re Resendiz, supra,* 25 Cal.4th at p. 240.)

It is settled that: "To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 . . . ; *People v. Waidla* (2000) 22 Cal.4th 690, 718.)" (*In re Resendiz, supra,* 25 Cal.4th at p. 239.) In the plea context, the defendant must establish that defense counsel was constitutionally ineffective. But in addition, the defendant must demonstrate it is reasonably probable that but for the ineffective advice she or he would not have entered a plea. (*Hill v. Lockhart, supra,* 474 U.S. at pp. 58-59; *In re Resendiz, supra,* 25 Cal.4th at p. 253; *In re Alvernaz, supra,* 2 Cal.4th at p. 934; *People v. Miralrio* (2008) 167 Cal.App.4th 448, 463.) This assertion—that the defendant would not have pled guilty—must be independently corroborated by objective evidence. (*In re Resendiz, supra,* 25 Cal.4th at p. 253; *In re Alvernaz, supra,* 2 Cal.4th at p. 938.) Our Supreme Court in *Alvernaz* held: "In determining whether a defendant, with effective assistance, would have accepted . . . a plea offer, pertinent factors to be considered include: whether counsel actually and

11

accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*In re Alvernaz, supra,* 2 Cal.4th at p. 938; accord, *In re Resendiz, supra,* 25 Cal.4th at p. 253.) Here, defendant has not shown any mistake, ignorance, inadvertence or any other factor overcame his exercise of free judgment with respect to his plea.

We first consider whether defendant's decision to plead no contest was influenced by Mr. Mimms's ineffectiveness in miscalculating the maximum potential sentence. Defendant claims Mr. Mimms included a section 667, subdivision (a)(1) five-year enhancement in the pretrial assessment of the maximum potential sentence. As noted, the section 667, subdivision (a)(1) five-year enhancement prior serious felony conviction allegation was premised on a juvenile court delinquency dispositional order. And a juvenile court delinquency dispositional order may not serve as the basis of a section 667, subdivision (a)(1) five-year enhancement prior serious felony conviction allegation. (*People v. Smith, supra,* 110 Cal.App.4th at p. 1080, fn. 10; *People v. West, supra,* 154 Cal.App.3d at pp.106-110.) In their discussions, defendant said he indicated the prior aggravated assault allegations in the September 24, 2012 information was based on a juvenile court case. The probation report prepared for an October 4, 2012 hearing identifies the aggravated assault incident arising from an April 5, 2005 arrest under the words "**JUVENILE HISTORY**." Further, the probation report identifies the juvenile court action as follows: "245 (A)(1) PC (ADW – [WITHOUT] FIREARM [WITH] GBI). 6-3-05 LOS ANGELES JUVENILE COURT, CASE #MJ 100-170-50407 100, PETITION SUSTAINED ON 245(A)(1) PC. CAMP COMMUNITY PLACEMENT." Mr. Mimms said he later determined and advised the trial court that the juvenile prior did not qualify for the five-year enhancement under section 667, subdivision (a)(1). In either case, it is undisputed defendant was aware of this fact when he entered his plea. Defendant was not ignorant of or mistaken about his maximum exposure when he entered his plea.

12

Defendant further asserts he was belatedly advised the sheriff's department had a palm print, rather than just a fingerprint. Defendant argues that he was advised of this change in the state of the evidence after the jury was impaneled. It is unclear when Mr. Mimms first learned of the palm print. There is no evidence the prosecution's timing in turning that information over to the defense was the result of ineffectiveness on Mr. Mimms's part. Moreover, defendant has not explained how late disclosure of the palm print, rather than a fingerprint, adversely influenced his decision to plead no contest. Defendant was not ignorant about the evidence against him when he entered his plea.

Finally, defendant claims he felt pressured to accept the offer. Defendant offers no evidence in support of this assertion beyond that discussed above. The trial court could reasonably conclude this bald assertion did not demonstrate by clear and convincing evidence good cause to permit a plea to be withdrawn. It is entirely within the realm of competent representation to reevaluate a plea offer after hearing the preliminary hearing evidence and receiving new disclosures from the prosecution.

Moreover, defendant has not shown it is reasonably probable that but for Mr. Mimms's alleged errors the result would have been different. Defendant acknowledged his guilt and indicated his willingness to bargain from the outset. Defendant spoke to Deputy Gore about the incident. Defendant acknowledged what he had done and said he needed to know how much time he would be offered. Further, Mr. Mimms could reasonably conclude defendant was unlikely to prevail at trial. The prosecution had an array of evidence including defendant's acknowledgment of guilt to Deputy Gore, the victim's statements, and the palm print evidence. Had defendant taken the stand, he would have been subject to impeachment by some of his aggravated prior conduct as related in the probation report. (*People v. Pearson* (2013) 56 Cal.4th 393, 434; *People v. Ervin* (2000) 22 Cal.4th 48, 96-97; *People v. Wheeler* (1992) 4 Cal.4th 284, 300.) Defendant faced a maximum sentence of 13 years. Defendant was subject to a 6-year high term on count 1, doubled to 12 years pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1) In addition, defendant was subject to a 1-year section 667.5, subdivision (b) prior prison term enhancement. Probably, any count 2 sentence would be

13

stayed pursuant to section 654, subdivision (a). Defendant does not claim Mr. Mimms failed to accurately communicate the settlement offer. By accepting a nine-year sentence, defendant avoided potential imposition of a significantly longer term. The trial court did not abuse its discretion in denying defendant's motion to withdraw his no contest plea.

## B. Sentencing

The trial court gave defendant credit for 321 days in presentence custody plus 320 days of conduct credit. However, defendant was in presentence custody for 322 days, from September 4, 2012, through July 22, 2013. He was entitled to credit for all days, including the day of his arrest continuing through the day of his sentencing. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; *People v. Heard* (1993) 18 Cal.App.4th 1025, 1027.) In addition, defendant should have received 322 days of custody credit. (§ 4019; *People v. Garcia* (2012) 209 Cal.App.4th 530, 539.) The judgment must be modified and the abstract of judgment amended to so provide. (*People v. Ramirez* (2014) 224 Cal.App.4th 1078, 1086-1087; *People v. Blunt* (1986) 186 Cal.App.3d 1594, 1602.)

The trial court imposed a $10 local crime prevention programs fine under section 1202.5, subdivision (a). The trial court failed to orally impose applicable penalties and a surcharge on that fine. The abstract of judgment reflects, "$29 PA, $2 Crim. Sur." The abstract is correct. The $10 local crime prevention programs fine was subject to $29 in penalties plus a $2 surcharge, specifically: a $10 state penalty (§ 1464, subd. (a)(1)); a $7 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $5 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $1 deoxyribonucleic penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $4 state-only deoxyribonucleic penalty (Gov. Code, § 76104.7, subd. (a)); a $2 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); and a $2 state surcharge (§ 1465.7, subd. (a)). The oral pronouncement of judgment must be modified to so provide. (*People v. Hamed* (2013) 221 Cal.App.4th 928, 937; *People v. Corrales* (2013) 213 Cal.App.4th 696, 700-702.)

## IV.  DISPOSITION

The oral pronouncement of judgment is modified to reflect $29 in penalties and a $2 surcharge on the Penal Code section 1202.5, subdivision (a) local crime prevention programs fine.  The judgment is modified to reflect 322 days of presentence custody credit and 322 days of conduct credit.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment reflecting the modified credits and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.



We concur:



MOSK, J.



KRIEGLER, J.


15