Filed 10/24/25  P. v. Pryor CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CERWILLIAM PRYOR,<br><br>    Defendant and Appellant. | F088230<br><br>(Super. Ct. No. BF188527A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Jesica Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Cerwilliam Pryor (defendant) is a recidivist thief and robber.  Shortly after being paroled in connection with an earlier robbery, defendant held up six commercial establishments over a five-week period.  He was eventually caught, prosecuted, and

convicted of 15 felonies. Having already sustained three strike convictions prior to his latest crime spree, defendant was sentenced to an aggregate prison term of 312 years to life.

Defendant challenges the jury verdicts on seven counts of assault with a semiautomatic firearm. One claim is based on a mislabeled verdict form. Another claim alleges the jury should have been instructed on a lesser included offense. We conclude the errors were harmless.

Defendant makes additional claims regarding sentencing. The People concede the trial court erred by not obtaining defendant's personal waiver of his right to a jury trial on allegations of aggravating circumstances and prior convictions under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). As to the prior convictions, we find no prejudice. The error was prejudicial, however, with regard to the aggravating circumstances.

It is plausible that a jury would not have reached the same conclusions as the trial court on some of the sentencing allegations. The trial court's findings resulted in upper term sentencing on multiple counts, which demonstrates why the error was not harmless. The cause will be remanded to allow defendant to exercise his right to a jury trial on the aggravating circumstances, and for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was prosecuted for committing a series of armed robberies at gas stations and convenience stores in November and December 2021. The case went to trial in April 2024. Defendant's guilt was established by fingerprint evidence, cell phone evidence, and video footage recorded on in-store surveillance systems.

A jury returned guilty verdicts on seven counts of robbery (Pen. Code, § 211; counts 1, 3, 5, 7, 9, 11 & 13), seven counts of assault with a semiautomatic firearm (*id.*, § 245, subd. (b); counts 2, 4, 6, 8, 10, 12 & 14), and one count of unlawful firearm possession (*id.*, § 29800, subd. (a)(1); count 15). Defendant was found to have

2.

personally used a firearm during the commission of each robbery.  (*Id.*, § 12022.53, subd. (b).)  (All undesignated statutory references are to the Penal Code.)

In a bifurcated proceeding, the trial court found defendant had three prior strike convictions.  The prior strikes were found to also qualify as prior serious felony convictions under section 667, subdivision (a).  Additionally, the trial court made true findings on allegations of aggravating circumstances for nearly all the current offenses. Further details are provided in the Discussion, *post*.

Based on the Three Strikes law, the trial court imposed consecutive prison sentences of 25 years to life for the robbery convictions.  On each of those counts, the prison term was increased by a 10-year firearm enhancement and a five-year prior serious felony conviction enhancement.  One additional consecutive sentence was imposed for the count 14 conviction of aggravated assault:  27 years to life for the offense plus five years for a prior serious felony conviction.  Stayed prison terms were imposed for counts 2, 4, 6, 8, 10, 12, and 15 pursuant to section 654.  Defendant filed a notice of appeal on the date of sentencing.

## DISCUSSION

### I.      Alleged Instructional Error

#### A.      Additional Background

At the beginning of defendant's jury trial, he faced five counts of assault with a firearm (§ 245, subd. (a)(2)) and two counts of assault with a semiautomatic firearm (*id.*, subd. (b)).  In the People's trial brief, notice was given of a forthcoming motion to amend the five lesser charges to conform to proof of the greater offense.  In court, the prosecutor explained, "[T]he evidence will show that the defendant used a semiautomatic handgun in each of the instances, and so the People would move to change all the 245(a)(2)s to 245(b)s."

The People's case-in-chief included testimony from a firearms expert. The expert was asked to explain the difference between a revolver and a semiautomatic handgun. He testified that a semiautomatic "requires you to pull [the] trigger to fire each individual bullet, as opposed to a revolver, which could require a multi-step process.… Certain revolvers could require you cocking that hammer before firing it, but also a big difference between a semiautomatic and a revolver [is] the way in which the bullets are maintained in the firearm."

The expert continued: "In a semiautomatic handgun, like I carry, it's magazine fed. With every shot that's fired, the slide or the top receiver cycles, expelling the spent shell casing. Whereas a revolver has a cylinder which contains those bullets, and as they fire, holds the casings which manually require you to remove those casings."

During the expert's testimony, the prosecutor displayed still images from security camera footage of the underlying incidents. Those images showed defendant holding a dark-colored object shaped like a pistol. The expert opined that the object was a semiautomatic handgun.

Whenever he was asked to state the basis for his opinions, the expert gave some variation of the following response: "Based on the shape of the frame, it's obvious that there wasn't a cylinder that's described in the revolver, leading me to believe that it is a semiautomatic, magazine-fed handgun." On cross-examination, defense counsel suggested the images might show something other than a firearm. The attorney asked, "Is it possible they could be airsoft or a BB gun or a pellet gun?" The expert replied, "It's possible."

At the close of evidence, the prosecutor moved to amend the charges of assault with a firearm to assault with a semiautomatic firearm. Defense counsel objected on the following grounds: "There was no firearm recovered. There was no ammunition recovered in any of these investigations to confirm or to determine what type of firearm, what caliber, what gauge. All we have is just an investigator, or all there was was an

4.

officer, based on his training and experience, looking at some screenshots of what it could be. And I don't think that's sufficient enough to change the charge from an (a)(2) to a (b) at this time."

The People's motion was granted, and an amended information was filed the same day. All relevant counts specified the use of a handgun. Defendant does not challenge the motion ruling or dispute the sufficiency of the evidence supporting his convictions. His claim on appeal is based on the trial court's failure to instruct the jury on assault with a firearm (§ 245, subd. (a)(2)) as a lesser/necessarily included offense for all charges of assault with a semiautomatic firearm (*id*., subd. (b)).

### B.     Law and Analysis

Trial courts have a sua sponte duty to instruct on "all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) "'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'" (*Id.* at p. 154.) The rule serves to prevent an unwarranted "all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other." (*People v. Birks* (1998) 19 Cal.4th 108, 119.)

"We review the trial court's failure to instruct on a lesser included offense de novo, considering the evidence in the light most favorable to the defendant." (*People v. Campbell* (2020) 51 Cal.App.5th 463, 501.) If the omission was erroneous, the test for prejudice is whether there is "a reasonable probability that the error affected the outcome. In other words, we apply the *Watson* standard …." (*Ibid.*; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) The remedy for a prejudicial error of this nature is to "'give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense.'" (*People v. Hayes* (2006) 142 Cal.App.4th 175, 184.)

Assault with a firearm is a lesser included offense of assault with a semiautomatic firearm.  (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199.)  The crimes are distinguished by the type of gun used in the assault.  Here, the People's only proof of the additional element was an expert's opinion based on the general appearance of defendant's gun as shown in video surveillance footage.  Defendant argues the jury may have viewed this evidence as weak but was reluctant to allow his commission of assault with an unknown type of handgun to go unpunished.  Even assuming defendant is correct on the question of error, his prejudice argument is unpersuasive.

"An automatic weapon is capable of firing more than one round with each trigger pull, while a semiautomatic weapon fires only one round with each trigger pull."  (*People v. Souza* (2012) 54 Cal.4th 90, 103; accord, *Silveira v. Lockyer* (9th Cir. 2002) 312 F.3d 1052, 1057, fn. 1.)  Both types of firearms reload automatically, but a semiautomatic "'requires the shooter to release the trigger lever before another shot can be fired.'"  (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4, quoting Walter, Rifles of the World (2d ed. 1998) p. 498.)  "An automatic firearm 'will continue firing until either the trigger is released or the ammunition has been expended.'"  (*Ibid.*)

Defendant's jury received no information about the differences between automatic and semiautomatic firearms.  The very concept of an automatic firearm was never mentioned.  The jury had no reason to consider whether it is even possible for a handgun to be fully automatic (it is possible), nor would it have known that such a weapon is classified as a "machinegun" under California law.  (§ 16880.)  The jury was also presumably unaware that assault with a machinegun is a more serious crime than assault with a semiautomatic firearm.  (§ 245, subd. (a)(3).)

The jury was instructed, pursuant to CALCRIM No. 875, on the legal definitions of a "firearm" and a "semiautomatic pistol."  "Firearm" was defined as "any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion."  (Accord,

§ 16520, subd. (a).) "Semiautomatic pistol" was defined as a pistol, i.e., a handgun, that "extracts a fired cartridge and chambers a fresh cartridge with each single pull of a trigger." (Accord, § 17140; see § 16640.)

As far as the jury was aware, based on the instructions it received, the key to determining whether a handgun is "semiautomatic" is knowing whether it "extracts a fired cartridge" with "each single pull of the trigger." (CALCRIM No. 875.) The People's expert likewise testified that a semiautomatic handgun "expel[s] the spent shell casing" each time the weapon is fired. This feature was contrasted with the design of a revolver, which has a cylinder that "holds the casings" when it is fired and requires manual removal of the expended casings. The limited amount of information strongly implied that handguns are either revolvers or semiautomatics. With that premise the jury would have reasoned that if defendant used a real handgun and the handgun was not a revolver, it must have been a semiautomatic.

Defendant's trial counsel made the following statements during closing argument: "[The People's expert] confirmed that it's not a revolver, and I agree it was not a revolver. But it's not a hundred percent that it's a semiauto pistol." Counsel did not argue, however, that defendant might have used a different type of firearm. He instead suggested the object was *something other than a firearm*, e.g., a "bb gun, pellet [gun], [or] airsoft gun." (See *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 [holding pellet guns and BB guns do not qualify as firearms "because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile"].) The defense presented no evidence or argument that it could have been a real but nonsemiautomatic handgun.

Defendant emphasizes the fact that no guns were recovered by police or introduced into evidence at trial. He thus contends "the prosecution had a very flimsy case that the firearm was a semiautomatic firearm." Defendant further argues the

7.

People's own expert admitted "that the firearm basically could have been anything." Neither of the quoted assertions are correct.

The People arguably had a weak case in terms of whether defendant used a real handgun as opposed to a replica, a toy gun, a "BB gun," or other nonfirearm. The People's expert admitted it was "possible" the object fell into the latter category. But assuming the object was a real handgun, the evidence of it being a semiautomatic was strong and uncontroverted. The expert testified it was "obvious" the gun was not a revolver due to the absence of a cylinder, which the jury could easily verify from seeing the People's exhibits. Moreover, defendant's own attorney agreed "it was not a revolver."

There is no reason to believe the jury would not have acquitted defendant if it doubted that the object was a real handgun. Defendant agrees "the jury certainly decided that [he] used a firearm." Given the jury's belief that a handgun was used, the only remaining issue, as framed by the instructions and the evidence, was whether it might have been a revolver. It was undisputed the gun was *not* a revolver, and there was no evidence it was anything other than a semiautomatic. Therefore, any error in failing to instruct on the lesser included offense was harmless.

## II.  Erroneous Verdict Form

Count 12 of the final amended information charged the crime of assault with a semiautomatic firearm in violation of section 245, subdivision (b). On the count 12 verdict form, defendant was said to be guilty of "Assault with a Firearm on a Person, in violation of Section 245(a)(2) of the Penal Code, … as charged in the Twelfth count of the information." Defendant was sentenced for committing the greater offense, as charged in the information, rather than the lesser offense identified on the verdict form.

The error apparently went unnoticed at trial, even when the verdict was read aloud as a determination of guilt for "assault with a firearm on a person, in violation of Section

245, sub (a), sub (2) of the Penal Code …." The mistake was later discovered by the probation department, and it was discussed in the probation report, but neither the parties nor the trial court acknowledged the issue at the time of sentencing. Defendant now frames the issue as one involving the imposition of an unauthorized sentence, perhaps in an effort to avoid forfeiture. (See *People v. Bolin* (1998) 18 Cal.4th 297, 330 [finding forfeiture based on failure to object "to the form of the verdict either at the time the court proposed to submit it or when the jury returned its finding"]; *People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6 ["An objection to jury verdict forms is generally deemed waived if not raised in the trial court"].)

Defendant claims he is entitled to resentencing on count 12 according to the verdict form, i.e., for the lesser offense of assault with a firearm (§ 245, subd. (a)(2)). The People argue forfeiture and harmless error. Assuming the claim was preserved for review, the People are correct about the lack of prejudice.

In *People v. Camacho* (2009) 171 Cal.App.4th 1269, the verdict form used for a robbery count erroneously identified the offense as carjacking. The charged offense was second degree robbery (§§ 211, 212.5, subd. (c)), but the verdict form "stated the jury found defendant 'guilty of the crime, CARJACKING, in violation of Penal Code Section 215(a), a Felony, as charged in Count 2 of the Complaint ….'" (*Camacho*, at p. 1272, boldface omitted.) On appeal, the erroneous language was "disregarded" as "surplusage." (*Ibid*.)

"'"There are innumerable authorities which declare that the form of the verdict is immaterial if the intention to convict of the crime charged is unmistakably expressed. [Citations.]" [Citations.] … [¶] In *People v. Reddick* [(1959) 176 Cal.App.2d 806], the court stated: "No particular form of verdict is required, so long as it clearly indicates the intention of the jury to find the defendant guilty of the offense with which he is charged. It is sufficient if it finds him guilty by reference to a specific count contained in the information. [Citations.]" [Citation.]' [Citations.]" (*People v. Camacho*, *supra*, 171

9.

Cal.App.4th at p. 1273.) """A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.""" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710.)

The appellate court in *Camacho* had "no difficulty in determining the jury intended to find defendant guilty of [the charged offense]" despite a completely erroneous verdict form. (*People v. Camacho*, *supra*, 171 Cal.App.4th at p. 1273.) As in this case, the charged offense was correctly pleaded in the information; the jury was instructed on that offense; and "the parties' arguments conformed to the information and instructions." (*Id*. at p. 1274.) "For purposes of sentencing, neither the parties nor the trial court treated the conviction [as the offense identified on the verdict form]; instead, defendant was sentenced for robbery [as charged]." (*Ibid*.)

Here, count 12 of the operative information was correctly pleaded as a violation of section 245, subdivision (b). The trial court's oral and written instructions repeatedly described the offense as assault with a "semiauto pistol" or "semi-auto firearm." The written instructions additionally cited to the applicable code section and subdivision. The prosecutor and defense counsel presented their arguments accordingly, never once referencing the lesser offense under section 245, subdivision (a)(2). And, as earlier noted, the error was disregarded at the time of sentencing despite the fact it was discussed in the probation report.

In *Camacho*, the verdict form mistakenly referred to a charge in the "complaint" rather than the information. (*People v. Camacho*, *supra*, 171 Cal.App.4th at p. 1272.) Here, the verdict form correctly referenced "the Twelfth count of the information." Lastly, the *Camacho* case "was tried from start to finish with the understanding defendant was charged with" the crimes for which he was sentenced. (*Id*. at p. 1273.) In this case the jury did hear a reading of charges at the beginning of trial that differed from those in the final amended information. But as we explain, the earlier statements do not cast doubt over the jury's intention to convict defendant of the charged offense.

10.

In his opening brief, defendant writes that "count 12 was upgraded to assault with a semiautomatic firearm" when the information was amended at the close of evidence. He implies count 12 previously alleged a violation of assault with a firearm under section 245, subdivision (a)(2), which is not true. The prosecutor's final amendment of the information resulted in several counts being renumbered. Count 12 was previously the lone charge of unlawful firearm possession by a convicted felon (§ 29800, subd. (a)(1)); it was renumbered as count 15. The charge that became count 12 in the final amended information was previously numbered as count 14.

When the trial court read the charges from the earlier version of the information at the start of trial, count 12 was not mentioned at all. In briefly summarizing count 14, the court provided the date of the incident and name of the victim but neglected to state the charge. In light of those circumstances, it cannot be argued the jury somehow confused count 12 as pleaded in the final amended information with an earlier numbering or description of the offense.

Immediately prior to reading the jury instructions, which occurred before the parties' closing arguments, the trial court announced, "At the close of the testimony, I determine[d] that I needed to renumber some of the charges and counts. Okay? So whatever I told you at the beginning of opening statement, the charges and the counts now will be as they're numbered." It is presumed the jurors were reasonably intelligent, understood the judge's statements, and followed the instructions they were given. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940; *People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

Defendant maintains the jury "actually" found him guilty of violating section 245, subdivision (a)(2). The record does not support his position. As a practical matter, it is unlikely any juror other than the foreperson even saw the verdict form. Had the foreperson or anyone else noticed the difference between count 12 and the six other charges of aggravated assault, they would have submitted a question to the trial judge.

11.

The jury made various inquiries and requests during its deliberations, but none indicated any awareness of the discrepancy. For all the reasons discussed, the jury undoubtedly intended to convict defendant of the offense identified in the court's instructions and discussed in the parties' closing arguments, i.e., assault with a semiautomatic firearm under section 245, subdivision (b).

## III. Absence of Jury Waiver re: Aggravating Circumstances

### A. Overview

"Under California law, most felonies carry a 'determinate' prison sentence consisting of one of three possible terms, designated the lower, middle, and upper terms." (*People v. Nguyen* (1999) 21 Cal.4th 197, 201.) The middle term is presumed to be the appropriate punishment unless there are circumstances in mitigation or aggravation of the crime. (See § 1170, subds. (a)(1), (b)(1); *People v. Hilburn* (2023) 93 Cal.App.5th 189, 203–205.) Rule 4.421 of the California Rules of Court (rule 4.421) provides a list of aggravating circumstances. The existence of an aggravating circumstance must be "stipulated to by the defendant" or determined "beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

There is a constitutional right to a jury trial on "all aggravating facts, other than a prior conviction, relied upon to justify an upper term sentence." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078.) A waiver of this right must be personally expressed by the defendant in open court. (Cal. Const., art. I, § 16.) The waiver must be explicit "'and will not be implied from a defendant's conduct.'" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166; accord, *People v. French* (2008) 43 Cal.4th 36, 47.) Therefore, "a '[d]efendant's failure to object also would not preclude his asserting on appeal that he was denied his constitutional right to a jury trial.'" (*French*, at p. 46.)

Defendant did not request a bifurcated trial on allegations of aggravating circumstances, nor did he expressly waive his right to a jury trial on those issues. The

People appropriately concede defendant's rights were violated when the issues were adjudicated in a bench trial. "When the constitutional right to jury trial is involved, … an express waiver [is required] even in cases in which the circumstances make it apparent that all involved—the trial court, the prosecutor, defense counsel, and the defendant—assumed that the defendant had waived or intended to waive the right to a jury trial." (*People v. French*, *supra*, 43 Cal.4th at p. 47.)

Defendant argues the error was either structural or prejudicial under the standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). The People initially disagreed with both contentions. At oral argument, the People conceded the issue of prejudice under *Chapman*. We will explain our reasons for accepting the concession.

## B.    Additional Background

The People alleged six aggravating circumstances for every count except for the gun possession charge. In other words, counts 1 through 14. The allegations were pleaded in the language of rule 4.421:

> "[The crime] involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness …. Rule 4.421(a)(1).

> "[The defendant] was armed with or used a weapon at the time of the crime …. Rule 4.421(a)(2).

> "The crime involved an attempted or actual taking or damage of great monetary damage …. Rule 4.421(a)(9).

> "[The defendant] has engaged in violent conduct [that] indicates a serious danger to society …. Rule 4.421(b)(1).

> "[The defendant] has served a prior prison term …. Rule 4.421(b)(3).

> "… Any other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed …. Rule 4.421(c)." (Some capitalization omitted.)

13.

The trial court found all allegations true except for those under the catchall provision of rule 4.421(c). The catchall allegations were rejected as "overly broad." Of the five allegations that were found true, three were relied upon to impose upper term sentencing on counts 2, 4, 6, 8, 10, 12, and 14. (See further discussion, *post*.)

## C. Standard of Review

Defendant's structural error claim is meritless. He relies on *People v. Ernst* (1994) 8 Cal.4th 441, where the denial of a jury trial on a charged offense was described as a structural defect in the judicial proceedings. (*Id*. at p. 449.) However, a complete deprivation of a jury trial on issues of guilt is of a different magnitude than the denial of a jury determination on penalty allegations. As held in *Washington v. Recuenco* (2006) 548 U.S. 212, "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." (*Id*. at p. 222; accord, *People v. French*, *supra*, 43 Cal.4th at p. 52, fn. 8 [distinguishing *Ernst* and following *Recuenco* where appellant was denied the right to a jury trial on aggravating circumstances].)

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman* standard of review." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.) "Under that standard, '[reversal and remand are required] unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true *all* of the aggravating facts upon which the court relied to conclude the upper term was justified ….'" (*Ibid.*, italics added, quoting *People v. Lynch* (2024) 16 Cal.5th 730, 743.) "Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley*, at p. 1087, quoting *Neder v. United States* (1999) 527 U.S. 1, 19.)

### D. Analysis

#### 1. *Rule 4.421(a)(1)*

The trial court found defendant's crimes showed "callousness" because he pointed a gun at "unarmed civilians" and created dangerous situations that could have resulted in persons getting shot. The People initially sought affirmance on the ground that "[a]ny rational jury would have found this aggravating factor true beyond a reasonable doubt." But as the People now concede, rational jurors could have found in favor of defendant.

Rule 4.421(a)(1) requires more than a showing of callous behavior. The defendant must have committed acts "disclosing a *high degree* of cruelty, viciousness, or callousness." (Italics added.) Examples include conduct involving "*great* violence," the infliction of "great bodily harm," or threats of such harm. (*Ibid*., italics added.) The pattern instruction for rule 4.421(a)(1) tells jurors "[a]n act discloses *callousness* when it demonstrates a lack of sympathy for the suffering of, or harm to, the victim[s]." (CALCRIM No. 3224.) The instruction further explains that the conduct must have been "distinctively worse than what was necessary to commit the crime[s]." (*Ibid*.; accord, *People v. Moreno* (1982) 128 Cal.App.3d 103, 110 ["The essence of 'aggravation' relates to the effect of a particular fact in making the offense distinctively worse than the ordinary"].) The latter point is repeated at the end of the instruction: "You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime." (CALCRIM No. 3224.)

Defendant fairly characterizes the underlying incidents as "garden variety convenience store hold-ups." The incidents were brief in terms of the duration of each assault and robbery. The crimes were violent only in a strictly legal sense. No shots were fired, and no victims were physically harmed. Although each victim was threatened with bodily harm when defendant pointed his gun at them, reasonable jurors could find his conduct was not "distinctively worse than an ordinary commission of the underlying

15.

crime." (CALCRIM No. 3224.) It is not apparent, beyond a reasonable doubt, that a 12-person jury would have unanimously reached the same conclusions as the trial court on the rule 4.421(a)(1) allegations.

### 2. Rule 4.421(a)(2)

Under rule 4.421(a)(2), being armed with a weapon and using a weapon during the commission of a crime are both aggravating circumstances. Such circumstances were necessarily determined by defendant's jury in its true findings on the firearm use enhancement (§ 12022.53, subd. (b)) for each robbery count and the guilty verdicts on each count of assault with a semiautomatic firearm. Although the trial court made true findings on the redundant weapon allegations, it did not rely on those factors at sentencing out of concern for the prohibitions against "dual use." (See § 1170, subd. (b)(5); Cal. Rules of Court, rule 4.420(h).)

### 3. Rule 4.421(a)(9)

An aggravating circumstance may be found when a crime involves "an attempted or actual taking or damage of great monetary value." (Cal. Rules of Court, rule 4.421(a)(9).) Defendant stole money from six commercial establishments but was convicted of seven robberies and seven assaults because some incidents involved multiple store employees. For two of the incidents (counts 3–4 & 11–12), there was no evidence of the amount of money taken from the store. A third incident (counts 1–2) resulted in an estimated loss of $150. Counts 5 through 8 all pertained to a separate incident for which the loss was estimated to be "[o]ver $300." In another robbery (count 13), which did not have a corresponding assault charge, defendant stole approximately $1,000 to $1,200. In the sixth robbery (count 9), during which two clerks were threatened at gunpoint (counts 10, 14) and forced to empty their respective cash registers, the total loss was "[a]bout $600 to $700."

16.

The trial court made true findings on the rule 4.421(a)(9) allegations for each count of robbery and assault with a semiautomatic firearm. The explanation for those findings was as follows: "[H]e did take cash from the till. Depending on whether or not that's great monetary damage, I guess would depend on who you were asking. If you ask Elon Musk, he'd probably say not too much. You ask somebody earning minimum wage, they would say that was a lot of money. [¶] So for the purposes of [rule] 4.421(a)(9), I will find that the crime[s] involved the actual taking of great monetary damage."

In respondent's brief, the People argued that a jury would have made the same findings as the trial court because "the cumulative harm across multiple incidents was significant." At oral argument, the People conceded the issue of prejudice. We accept the concession for the following reasons.

The aggravating circumstances listed in rule 4.421(a) are based on "factors relating to the crime," i.e., the facts underlying each count of conviction. Put differently, these factors "must relate to the specific crime to be aggravated." (*People v. James* (1989) 208 Cal.App.3d 1155, 1167, fn. 7.) The pattern instruction for rule 4.421(a)(9) has optional language to explain this principle to jurors: "You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime." (CALCRIM No. 3231.) In this case, rule 4.421(a)(9) allegations were pleaded as to each count of robbery and each count of assault with a semiautomatic firearm. A jury could not properly consider "the cumulative harm across multiple incidents" to determine whether each individual crime involved a loss of great monetary value.

CALCRIM No. 3231 also contains the following mandatory language: "You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime." As the trial court observed, people will have different perspectives regarding the value of three- and four-figure sums of money based on their own financial

17.

means.  Moreover, a jury could have easily reached conclusions different from the trial court on those counts for which there was *no evidence* of the amounts taken during the offense.

Jurors also could have been swayed by the defense argument that the crimes were not distinctively worse than ordinary because defendant limited his demands to the contents of cash registers.  He did not attempt to take the personal valuables of any store employees or customers, e.g., "jewelry, watches, cell phones," wallets, or purses.  For all these reasons, the denial of defendant's right to a jury trial on the rule 4.421(a)(9) allegations was not harmless.

Defendant's opening brief contains a footnote in which he cursorily asserts a related claim of insufficient evidence.  He argues that none of the cash sums taken in the robberies "constitute 'great monetary value' as a matter of law."  (Boldface and italics omitted.)  Defendant goes on to state, however, that we need not reach the merits of his claim and "can simply decide that a jury might not have found beyond a reasonable doubt that these amounts constitute 'great monetary value.'"

Given defendant's consent to having the secondary claim left unresolved, we exercise our discretion to "disregard points raised in a footnote rather than being properly presented under a discrete heading with appropriate analysis."  (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5, citing *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160; see Cal. Rules of Court, rule 8.204(a)(1)(B).)  "Footnotes are not the appropriate vehicle for stating contentions on appeal."  (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947; accord, *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 502, fn. 5.)

### 4.      *Rule 4.421(b)(1)*

Rule 4.421(b) lists aggravating factors relating to the defendant.  The trial court found defendant engaged in violent conduct indicating a danger to society (*id.*, subd.

18.

(b)(1)) because he "point[ed] a weapon at unarmed civilians in order to take money from their presence." No further explanation was provided. The People initially argued that a jury would have undoubtedly made the same finding because defendant "committed multiple armed robberies over a short period, threatened employees with a firearm, and created a substantial public risk." At oral argument, the People changed their position and conceded the issue of prejudice. We accept the concession for the following reasons.

CALCRIM No. 3234 is the pattern instruction for rule 4.421(b)(1) allegations. Jurors are instructed to consider whatever violent conduct is alleged by the prosecution in light of all evidence presented, including "evidence about the defendant's background." The instruction further states, "You may not find the allegation true unless all of you agree that the People have proved that the defendant's violent conduct was distinctively worse than that posed by an ordinary commission of the underlying crime and that the violent conduct, considered in light of all the evidence presented[ and the defendant's background], shows that the defendant is a serious danger to society."

Determining whether a defendant's conduct is indicative of a *serious* danger to society requires an imprecise and subjective analysis, which makes it difficult for a reviewing court to conclude, under the *Chapman* standard, that a jury would have made the same findings as the trial court. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 840; *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1139, overruled on other grounds in *People v. Lynch*, *supra*, 16 Cal.5th at pp. 768–769.) It is plausible jurors in this case would have had difficulty characterizing defendant's conduct as "violent" and/or concluding the allegedly violent conduct was distinctively worse than what was minimally required to commit the offenses, especially the crime of assault with a semiautomatic firearm. In any event, remand is required because of the prejudicial denial of defendant's right to a jury trial on the allegations under rule 4.421(a)(1) and (9), as explained *ante*. (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.)

19.

### 5. *Rule 4.421(b)(3)*

The trial court found defendant had served a prior prison term. Under rule 4.421(b)(3), prior incarceration is an aggravating circumstance. At sentencing, the trial court expressly declined to consider this factor because it believed that relying upon it would constitute impermissible "dual use."

In *People v. Lynch*, *supra*, 16 Cal.5th 730, the California Supreme Court declined to decide whether a jury determination is required for rule 4.421(b)(3) allegations. (*Lynch*, at pp. 744–745, 774–775 & fn. 20.) Earlier this year, in *People v. Wiley*, *supra*, 17 Cal.5th 1069, the high court strongly implied that the answer is yes. (See *id*. at pp. 1083–1084, 1086 [holding "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements"].) Assuming defendant was entitled to a jury trial on this issue, it is clear beyond a reasonable doubt that the same finding would have been made.

Denial of the right to a jury trial may be found harmless when there is no evidence in the record "'that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.) The People's uncontroverted evidence showed defendant was sentenced to an aggregate prison term of nine years four months in May 2013, served more than 85 percent of the sentence, and was paroled in late September 2021 (approximately 53 days prior to his commission of the first robbery in this case). Also, defense counsel below conceded that "a prior prison term was proven." While this aggravating factor was not considered at sentencing, remand is still required because of the prejudicial denial of defendant's right to a jury trial on the allegations under rule 4.421(a)(1) and (9). (*Wiley*, at p. 1087.)

### E. Sentencing Impact

Under the Three Strikes law, if a defendant has two or more prior serious or violent felony convictions, punishment for any current serious or violent felony conviction "shall be an indeterminate term of life imprisonment with a minimum term of

the indeterminate sentence calculated as the greatest of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction …. [¶] (ii) Imprisonment in the state prison for 25 years … [or] [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any [applicable] enhancement …." (§ 667, subd. (e)(2)(A)(i), (ii), (iii).)

"[T]he procedure for calculating the minimum term under option 1 is as follows: The trial court selects the upper, middle or lower term in accordance with section 1170, subdivision (b) just as it would if there were no three strikes law. The court then triples the selected term. If the resulting term is greater than the terms under options 2 and 3, the court imposes the resulting term as the minimum term of the indeterminate life sentence. If the resulting term is less than the terms under options 2 and 3 the court imposes whichever of these latter two options yields the greater minimum term." (*People v. Keelen* (1998) 62 Cal.App.4th 813, 820.)

Defendant was sentenced under the Three Strikes law on all counts, which resulted in indeterminate life terms. The error in denying his right to a jury trial on aggravating circumstances would be harmless but for the trial court's decision to impose terms of 27 years to life for each conviction of assault with a semiautomatic firearm. The crime is ordinarily punishable by a determinate sentence of three, six, or nine years in prison. (§ 245, subd. (b).) By setting the period of parole ineligibility at 27 years instead of 25 years, the trial court necessarily imposed upper term sentencing based on its findings of aggravating circumstances. (§ 667, subd. (e)(2)(A)(i).) Defendant is therefore entitled to have his sentence vacated and the matter remanded for further proceedings. (See *People v. Wiley*, *supra*, 17 Cal.5th at p. 1087; *People v. Lynch*, *supra*, 16 Cal.5th at pp. 768, 774–777.)

21.

**IV.    Absence of Jury Waiver re: Prior Convictions**

Defendant also claims he was denied the right to a jury trial on allegations of three prior strike convictions and, as separately pleaded under section 667, subdivision (a), three prior serious felony convictions.  Although he presents these arguments in combination with the claims discussed *ante*, the issues are quite distinct.  With respect to the prior convictions, defendant's claims are insufficiently developed and could be rejected for that reason alone.  (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Hardy* (1992) 2 Cal.4th 86, 150.)  In any event, the claims fail for lack of prejudice.

**A.    Additional Background**

Defendant was alleged to have previously been convicted of robbery in May 2013, January 2010, and June 2009.  Each conviction was alleged to constitute a prior strike (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and a prior serious felony conviction (§ 667, subd. (a)).  Based on defendant's date of birth, he was between the ages of 18 and 21 when the prior matters were adjudicated.

Defendant filed a motion to bifurcate the recidivism allegations, which was heard before jury selection in the guilt phase of trial.  The trial court stated it was "inclined to grant that."  There was no further discussion of the issue until two weeks later, when the jury returned its guilty verdicts.

Immediately following the jury's release, the trial court addressed defendant on the record:  "Okay.  [Defendant], that was the jury's verdict on the counts.  We have the priors on the other things, the prior prison convictions and the California Rules of Court, et cetera.  We're going to have a Court trial on those tomorrow.  So we need you back because that's important; so we'll have you back tomorrow morning at 9:00."  Defendant said nothing in response.  His trial counsel merely replied, "Thank you, Your Honor."

A bench trial was conducted the following day.  The minute order from that date reads, in pertinent part:  "Defendant through counsel waives trial by jury on the issue of

22.

prior conviction(s) and agrees that the matter may proceed by court trial.  Defendant advised of rights and waives same.  The court finds defendant understands his constitutional rights and makes an intelligent waiver thereof." (Some capitalization omitted.)

The minute order starkly conflicts with the reporter's transcript.  The latter shows the proceedings began with the trial court announcing, "This is the Court trial on the priors, and the CRCs.  [¶] [Defense counsel], are you ready to proceed?"  Defendant's attorney responded affirmatively.  The prosecutor likewise indicated his readiness and proceeded to introduce a certified section "969b packet" into evidence.

Outside the pronouncement of judgment, discrepancies between a minute order and the reporter's transcript are resolved by adopting whichever "should be given greater credence under the circumstances of the particular case." (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880; accord, *People v. Smith* (1983) 33 Cal.3d 596, 599.)  We will assume the truth of defendant's present contention that he did not personally and expressly waive his right to a jury trial on the recidivism allegations.

The People's evidence indicated the alleged "convictions" from 2009 and 2010 were actually juvenile adjudications.  Under the Three Strikes law, not all juvenile adjudications qualify as strikes.  Among other requirements, the offender must have been 16 years of age or older at the time he or she committed the prior serious or violent felony.  (§ 667, subd. (d)(3)(A).)  The People's evidence showed the date of arrest and/or date of disposition for the 2009 and 2010 adjudications, but not the date of the offense.

The People's evidence also included a certified abstract of judgment for the 2013 conviction, which showed defendant was sentenced as a one-strike offender in that case.  This evidence confirmed at least one of the prior juvenile adjudications did qualify as a strike.  At the same time, however, the evidence necessarily implied one of two scenarios:  the trial court in the 2013 case had dismissed a second prior strike in the interests of justice (see § 1385, subd. (a); *People v. Superior Court* (*Romero*) (1996) 13

23.

Cal.4th 497, 504), or one of defendant's juvenile adjudications for robbery did not qualify as a strike conviction.

Defense counsel disputed the penalty allegations with regard to the 2009 adjudication for lack of proof. The trial court made true findings on all the allegations. Prior to sentencing, the probation department correctly advised the court that defendant's juvenile adjudications did not qualify for the five-year enhancement under section 667, subdivision (a). Accordingly, the trial court imposed only one prior serious felony conviction enhancement for each of the current offenses.

Defendant now broadly alleges a deprivation of his right to "a jury trial on the allegations of prior convictions." His substantive arguments appear in a single paragraph and footnote on page 45 of his opening brief. Exclusively focusing on the juvenile adjudication from 2009, he contends "a jury may very well have been persuaded by [his trial counsel's] argument that the prosecution did not prove that [he] was 16 at the time of the offense."

### B. Law and Analysis

There is no federal or state constitutional right to a jury trial on the fact of a prior conviction. In the federal context, this is often referred to as the *Almendarez-Torres* exception to the *Apprendi* rule. (See *Almendarez-Torres v. United States* (1998) 523 U.S. 224; *Apprendi v. New Jersey* (2000) 530 U.S. 466.) "The *Almendarez-Torres* holding [is] a narrow exception to the Sixth Amendment's jury trial right for sentencing-enhancing facts. '*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (*People v. Wiley*, *supra*, 17 Cal.5th at pp. 1079-1080.)

In California, defendants "have a *statutory* right to a jury trial on 'the question of whether or not the defendant has suffered the prior conviction.'" (*People v. Gallardo* (2017) 4 Cal.5th 120, 125, citing §§ 1025, subds. (b) & (c), 1158, italics added.) "The

requirement of an express waiver [under section 16 of article I of the California Constitution] applies to the constitutional right to a jury trial, but not to jury trial rights that are established only by statute." (*People v. French*, *supra*, 43 Cal.4th at p. 46.) Therefore, the statutory right to a jury trial on prior conviction allegations can be impliedly waived and forfeited. (*Id.* at p. 47; see *People v. Grimes* (2016) 1 Cal.5th 698, 737–738 [finding forfeiture of claim on appeal]; *People v. Saunders* (1993) 5 Cal.4th 580, 589 ["defendant's failure to object precludes his obtaining appellate relief on the basis of the statutory error committed by the trial court"].)

The conduct of defendant and his trial attorney clearly demonstrated an implied waiver of the statutory right to have a jury decide the prior conviction allegations. If nothing else, the failure to object resulted in a forfeiture of his current claims—at least with respect to the enhancement findings under section 667, subdivision (a). Moreover, any error concerning the enhancements was harmless. The trial court imposed only one such enhancement at sentencing based on the adult conviction for robbery in 2013. The enhancement was based on "the bare fact of a prior conviction," and the record does not contain any "'evidence that could rationally lead to a contrary finding'" by a jury. (*People v. Wiley*, *supra*, 17 Cal.5th at pp. 1086, 1087.)

As to the prior strike finding based on defendant's juvenile adjudication in 2009, it is possible there was no waiver or forfeiture on the issue of his age at the time of the offense. (See *People v. Gallardo*, *supra*, 4 Cal.5th at p. 127 [holding appellant's jury trial waiver was "most naturally understood" as a waiver of the limited statutory right to have a jury decide the fact of the prior conviction but not issues outside the *Almendarez-Torres* exception].) Relying on *Erlinger v. United States* (2024) 602 U.S. 821 and *People v. Wiley*, *supra*, 17 Cal.5th 1069, defendant argues he had a constitutional right to have a jury determine whether he was over the age of 16 when he committed the offense. We need not decide this issue because the alleged error was harmless.

The People submit there is no prejudice "because [defendant] had two other qualifying strike priors, which are sufficient to trigger the indeterminate term under the Three Strikes law." Defendant does not respond to this argument in his reply brief. The People are correct.

Defendant's claim is based on the constitutional right to a jury trial on all facts legally essential to the punishment imposed at sentencing, "other than the bare fact of a prior conviction and its elements." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1086.) As the People correctly observe, the finding of a third prior strike conviction did not subject defendant to any greater punishment than he would have otherwise received. This is so because indeterminate sentencing under the Three Strikes law is triggered upon pleading and proof of *two* prior strike convictions. (§ 667, subd. (e)(2)(A).) For all intents and purposes, the trial court's finding of a third prior strike based on the 2009 adjudication was superfluous and, therefore, nonprejudicial.

## V.     Mooted Claims

As a general rule, double jeopardy principles do not prohibit retrial following reversal on appeal for reasons other than insufficiency of the evidence. (*People v. Wilson* (2023) 14 Cal.5th 839, 855; see *Monge v. California* (1998) 524 U.S. 721, 728–729 [double jeopardy protections are generally inapplicable to sentencing proceedings].) Defendant may therefore exercise his right to a jury trial on the aggravating circumstances that were found true, and the People may attempt to prove them again. The People may also move to dismiss the allegations. Resentencing is inevitable, which renders moot the following additional claims in defendant's opening brief.

Defendant construes the trial court's failure to impose enhancements for his juvenile adjudications under section 667, subdivision (a) as an implied dismissal of those enhancements. He argues the sentencing minutes "should be amended to reflect this dismissal." The People agree and further propose the enhancements be stricken by this

26.

court.  Both sides correctly observe that juvenile adjudications do not, under any circumstances, qualify as convictions for purposes of section 667, subdivision (a).  (*People v. West* (1984) 154 Cal.App.3d 100, 107–108, cited with approval in *People v. Park* (2013) 56 Cal.4th 782, 798; accord, *People v. Smith* (2003) 110 Cal.App.4th 1072, 1080, fn. 10; *People v. O'Neal* (2000) 78 Cal.App.4th 1065, 1068.)  As such, we hereby order the true findings made under section 667, subdivision (a) as to defendant's juvenile adjudications in 2009 and 2010 stricken from the judgment.  Since defendant will be resentenced on remand, we decline to order an amendment of the earlier sentencing minutes.

The next claim relates to the punishment of 27 years to life on counts 2, 4, 6, 8, 10, 12, and 14.  Defendant argues the trial court did not understand the *Keelen* procedure, was not aware of its discretion to impose prison terms of 25 years to life, and was misled by certain statements in the probation report.  (See *People v. Keelen*, *supra*, 62 Cal.App.4th at pp. 819–820 [explaining how to calculate the minimum indeterminate term under § 667, subd. (e)(2)(A)].)  We have already discussed the applicable law and presume the trial court understands it.  Defendant is free to present his arguments for lesser punishment on remand.

Defendant alleges ineffective assistance of counsel (IAC) based on his trial lawyer's failure to request concurrent sentencing on certain counts.  This claim is based on section 667, subdivision (c)(6), which has been interpreted as authorizing discretionary concurrent sentencing when "'multiple current felony convictions are "committed on the same occasion" or "aris[e] from the same set of operative facts."'"  (*People v. Henderson* (2022) 14 Cal.5th 34, 47.)  Defendant may argue for any sentencing leniency permitted by law on remand.

Lastly, defendant relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 to challenge the imposition of certain monetary obligations.  Those claims were forfeited by his failure to assert them below.  (*People v. Evers* (2023) 97 Cal.App.5th 551, 556.)

27.

Defendant's effort to avoid forfeiture by alleging IAC also fails.  (E.g., *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 908; see *People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14 [noting "a defendant cannot automatically transform a forfeited claim into a cognizable one merely by asserting ineffective assistance of counsel"]; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 [appointment of counsel at trial does not conclusively establish the inability to pay fines].)  Defendant is free to challenge the imposition of fines, fees, and/or assessments when he is resentenced.

## DISPOSITION

The true findings made under Penal Code section 667, subdivision (a) based on defendant's juvenile adjudications are ordered stricken from the judgment.  The true findings made pursuant to rule 4.421 of the California Rules of Court are reversed for lack of a valid waiver of the right to a jury trial.  All other verdicts and findings are affirmed.  Defendant's sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion.

PEÑA, J.

WE CONCUR:

FRANSON, Acting P. J.

FAIN, J.*

---

*Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.